**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

**CLARESSA MORSE,**

        **Claimant,**

**v.**

**COMMISSIONER OF SOCIAL
SECURITY,**

        **Defendant.**

**Case No: 6:25-cv-1389-RBD-DCI**

---

**REPORT AND RECOMMENDATION**

Claressa Morse (Claimant) seeks review of the Social Security Administration's denial of her claim for disability benefits.  Doc. 1.  In a decision dated October 4, 2023, the Administrative Law Judge (ALJ) found that Claimant was not under a disability at any time from August 25, 2017, the alleged onset date, through December 31, 2018, the date last insured.  R. 517, 518.  Claimant now requests that the Court reverse the decision and that the claim for benefits be allowed.  Doc. 1 at 3.

 Having considered the parties' memoranda and being otherwise fully advised, the undersigned recommends that the Commissioner's decision is due to be **REVERSED** and **REMANDED**.

### I.    Procedural History

In 2018, Claimant's application for DIB was denied and Claimant sought reconsideration and a hearing.  R. 576.  On May 12, 2020, the ALJ conducted an administrative hearing (the First Hearing) and subsequently issued a decision denying the application.  *Id*.  Claimant appealed and the United States District Court for the Northern District of Georgia remanded Claimant's case.

R. 575 to 614.  On October 31, 2022, the Appeals Council remanded the case and ordered the ALJ to take any further action necessary to complete the administrative record and issue a new decision. R. 616-20.  The ALJ conducted a hearing (the Second Hearing) and then issued a decision denying Claimant's application finding that Claimant was not disabled under sections 216(i) and 223(d) of the Social Security Act through December 31, 2018, the last date insured.  R. 517, 518, 526-545.

On February 28, 2025, the Appeals Counsel denied Claimant's request for review of the decision.  R. 498-501.  The instant case followed.  Doc. 1.  By Order dated April 20, 2026, the undersigned directed the Commissioner to file a supplement to address certain arguments Claimant raised in her brief.  Doc. 20.  The Commissioner has filed a Supplemental Response and Claimant has filed a Supplemental Reply.  Docs. 21, 22.  The matter is ripe for consideration.

## II.    Issues on Appeal

Claimant raises four issues on appeal: (1) whether the ALJ properly evaluated the opinion evidence; (2) whether the ALJ properly evaluated the impact of Claimant's headaches or her chronic pain with respect to the RFC; (3) whether the ALJ properly evaluated Claimant's statements about her symptoms; and (4) whether the RFC is supported by substantial evidence. The undersigned recommends that remand is warranted with respect to the ALJ's consideration of Claimant's statements and the RFC.  Since these related issues are dispositive, the undersigned recommends that the Court need not address Claimant's remaining issues.  *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (finding that on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (finding no need to analyze other issues when case must be reversed due to other dispositive errors).

### III.    Standard of Review

As the Eleventh Circuit has stated:

> In Social Security appeals, we must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards. Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion. We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].

*Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citations and quotations omitted).  "With respect to the Commissioner's legal conclusions, however, our review is *de novo.*"  *Lewis v. Barnhart*, 285 F.3d 1329, 1330 (11th Cir. 2002).

### IV.    Discussion

With respect to her subjective complaints, Claimant contends that the ALJ impermissibly discounted her allegations related to her symptoms and limitations.  Doc. 17 at 19 to 21. Specifically, Claimant argues that the ALJ mischaracterized Claimant's abilities and that the ALJ's reliance on limited daily activities was misplaced.  *Id.* at 20 to 21.  Claimant argues that the ALJ cited to light household chores, driving short distances, childcare, and a "brief period of Instacart deliveries" as being inconsistent with disabling pain, but "[m]inimal daily activities do not equate to the capacity to sustain full-time work on a regular and continuing basis."  Doc. 19 at 5.

The undersigned agrees that remand is appropriate because the ALJ mischaracterized the nature of Claimant's daily activities.  In evaluating a claimant's statements as to the intensity of symptoms, the ALJ considers: the claimant's daily activities; precipitating and aggravating factors; the type, dosage, and effectiveness of medication; the claimant's treatment; measures used to relieve pain or symptoms; and any conflicts between the claimant's statements and the evidence.  *See* 20 CFR § 404.1529(c)(1) to (4).  If an ALJ discredits a claimant's testimony as to the subjective symptoms, then the ALJ "'must clearly articulate explicit and adequate reasons for'

doing so." *Ross v. Comm'r of Soc. Sec.*, 794 F. App'x 858, 867 (11th Cir. 2019) (quoting *Dyer v. Barhart*, 395 F.3d 1206, 1210 (11th Cir. 2005). The ALJ may consider the consistency of the claimant's statements along with the rest of the record to reach this determination. *Id.* Such findings "'are the province of the ALJ,' and [the court] will 'not disturb a clearly articulated credibility finding supported by substantial evidence.'" *Id.* (quoting *Mitchell v. Comm'r of Soc. Sec.*, 771 F.3d 780, 782 (11th Cir. 2014)). But "[t]he Commissioner must not reject a claimant's statements 'solely because the available objective medical evidence does not substantiate' the statements." *Higgins v. Comm'r of Soc. Sec.*, 2025 WL 2218846, at *4 (11th Cir. Aug. 5, 2025) (quoting 20 CFR § 404.1529(c)(2)). "If an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be so obvious as to the credibility finding." *Malak v. Comm'r of Soc. Sec.*, 131 F.4th 1280, 1287 (11th Cir. 2025) (citing *Foote v. Chater*, 67 F.3d 1553, 1561-62 (11th Cir. 1995)).

Also, "the ALJ may consider daily activities among all other record evidence when making a residual functional capacity finding." *Shear v. Comm'r of Soc. Sec.*, 2023 WL 5200487, at *5 (M.D. Fla. Aug. 13, 2023) (citing *Macia v. Bowen*, 829 F.2d 1009, 1012 (11th Cir. 1987)). But participating in activities of short duration such as housework does not disqualify a claimant from a disability finding. *Gray v. Comm'r, Soc. Sec. Admin.*, 2022 WL 17176706, at *2 (11th Cir. Nov. 23, 2022) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997)); *see also Martz. v. Comm'r, Soc. Sec. Admin.*, 649 F. App'x 948, 961-62 (11th Cir. 2016) ("[H]aving the stamina to cook simple meals and to drive five to ten miles at a time does not necessarily constitute substantial evidence sufficient to discredit [the plaintiff's] claims that she is not able to perform light (or perhaps even sedentary) work on a regular and continuing basis given her claim of ongoing and persistent fatigue.").

Here, the ALJ provides the following analysis with respect to Claimant's statements regarding her symptoms:

> Due to her conditions and symptoms, the claimant stated that she had a number of limitations, some of which involved lifting, squatting, bending, standing, reaching, using her hands, walking, sitting, kneeling, stair climbing, completing tasks, and concentrating (Exhibits 1E; 4E; 7E; 9E; 15E). She noted that she had difficulties completing daily activities including tending to her personal care needs and completing household chores and she had to take frequent breaks (Exhibits 7E; 9E; 15E). The claimant reported a restricted ability to be efficient spending hours of time at a computer and communication requirements and she was unable to hold a telephone (Exhibits 1E; 15E). She noted that she dropped things from her hands and she was unable to turn her neck without great pain (Exhibit 4E). The claimant said she was unable to pick up her children or sit on the floor to play with her children (Exhibit 4E). She stated that her husband had to bathe their children and her older child helped by and watching and playing with their younger child (Exhibits 7E; 15E). Despite such allegations of disabling symptoms and limitations, the claimant could work part-time as a grocery deliverer, carry and change diapers for her infant born on July 10, 2018, care for her children, tend to her personal care needs, straighten up, load the dishwasher, wipe off the counters, fix the couch pillows, vacuum, fold laundry, prepare simple meals, shop in stores, watch television, manage her finances, and drive (Hearing Testimony & Exhibits 7E; 15E). Thus, the claimant engaged in activities that were not limited to the extent one would expect, given her complaints of disabling symptoms and limitation.

R. 513.[1]

As such, the ALJ discredits Claimant's statements related to her disabling symptoms based on Claimant's other statements related to her work as a grocery deliverer and her ability to, among

---

[1] In the Supplemental Response, the Commissioner provides this same block quote from the ALJ's decision but inserts pinpoint citations to the page numbers for the First Hearing transcript. Compare R. 513 with Doc. 21 at 3. First, this change in text is misleading because the ALJ generally cited to "Hearing Testimony" in support of his findings and the reader cannot be certain which pages the ALJ relied upon. Second, there were two hearings and two separate transcripts in the record because Claimant's case was originally remanded after the First Hearing. The transcript from the Second Hearing reflects that the ALJ took into consideration the testimony offered at the First Hearing. *See* R. 533 to 534. And at both hearings, the ALJ took testimony on the grocery delivery work and, therefore, the undersigned will not assume that the ALJ meant to limit citation to certain pages from the hearing testimony as the Commissioner would have the Court do.

things, "carry and change diapers," shop in stores, and drive.[2]  Claimant argues, however, that the

ALJ mischaracterized the nature of these activities.  Doc. 17 at 14, 20.  The undersigned agrees.

Namely, the ALJ generally cites to the "Hearing Transcript" and two Function Reports, but a

review of these materials reflects that Claimant described significant limitations for each activity

which are not reflected in the ALJ's decision.  The following discussion on this issue from a court

in this District is instructive:

> The Court agrees with Magistrate Judge Kelly that the ALJ's credibility determination is inadequate and is not supported by substantial evidence in the record. Regarding the ALJ's third asserted reason for discrediting Plaintiff's subjective statements about his pain, the ALJ mischaracterizes the evidence in the record and departs from the law concerning consideration of a claimant's daily activities. The ALJ specifically references Plaintiff's "[ability] to do some household chores, occasionally cook, and go to the grocery store," along with Plaintiff's "[ability] to take care of his own personal hygiene needs [and] drive regularly." (R. 22). While there is evidence indicating that Plaintiff can vacuum, dust, do laundry, dress himself, and go to the grocery store, the ALJ omits that Plaintiff finds it difficult to physically perform these activities, cannot perform these activities for prolonged periods of time, does not perform these activities regularly, and cannot perform these activities without experiencing immense pain. (R. 42, 45, 51, 200, 215). While there is evidence that Plaintiff occasionally cooks, the ALJ omits that Plaintiff cannot cook for a prolonged period of time, does not cook regularly, and cannot complete the preparation of a meal without taking a break to sit or lie down. (R. 45, 64, 200). While there is evidence that Plaintiff has the capacity to drive a car, there is no evidence indicating that Plaintiff "drive[s] regularly" as the ALJ posits; rather, the evidence in the record shows that Plaintiff finds it painful to drive, avoids driving long distances, and only occasionally drives his daughter a short distance to or from school, amounting to no more than fifteen to twenty miles of driving per week. (R. 36, 201, 212). The ALJ additionally omits that Plaintiff relies almost exclusively on his wife and daughter to perform the household, cooking, and driving activities that the ALJ uses to discredit Plaintiff's subjective complaints of pain. (R. 36, 45, 212, 215). The ALJ ultimately fails to articulate why Plaintiff is "not entirely credible" and fails to reconcile the vast amount of record evidence that contradicts his conclusion.
>
> Moreover, the ALJ departs from the law concerning the consideration of a claimant's daily activities. It is certainly true that an ALJ may consider a claimant's daily activities when assessing the credibility of the claimant's subjective

---

[2] With respect to these activities, the ALJ cites to the "Hearing Transcript" and 7E and 15E, which are Claimant's Function Reports.

statements about his pain. *Wheeler v. Heckler*, 784 F.2d 1073, 1075 (11th Cir. 1986) (per curiam); *Bear v. Astrue*, 838 F. Supp. 2d 1267, 1281 (M.D. Fla. 2011). However, it is wholly improper for an ALJ to consider such daily activities if they are of a short duration, limited, and not vigorous. *See, e.g.*, *Lafond v. Comm'r of Soc. Sec.*, No. 6:14–cv–1001–Orl–DAB, 2015 WL 4076943, at *10 (M.D. Fla. July 2, 2015) (finding that ALJ erred by considering evidence that the claimant drove short distances, washed dishes, prepared meals, shopped for groceries, and did her own laundry in assessing the claimant's credibility); *Wolfe v. Comm'r of Soc. Sec.*, No. 6:11–cv–1316–ORL–DAB, 2012 WL 3264916, at *6 (M.D. Fla. Aug. 10, 2012) (finding that ALJ erred by considering evidence that the claimant went grocery shopping, prepared meals, and performed household chores in assessing the claimant's credibility); *cf. Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997) ("Nor do we believe that participation in everyday activities of short duration, such as housework...disqualifies a claimant from disability or is inconsistent with the limitations recommended by...treating physicians."). Here, there is no evidence in the record indicating that Plaintiff is able to vigorously complete household chores, cook, shop for groceries, or drive for prolonged periods of time and without limitation; in fact, all of the evidence in the record points to the opposite conclusion. The ALJ therefore erred by considering these particular daily activities when assessing Plaintiff's credibility.

*Imperial v. Comm'r of Soc. Sec.*, 2017 WL 2199408, at *3 to 4 (M.D. Fla. May 19, 2017).

Here, the ALJ omits from the description that Claimant's activities were quite limited in nature. For example, Claimant's testimony reflects that she engaged in the part-time activity related to the delivery of groceries through Instacart, but the deliveries were done only with the assistance of her husband and friend and Claimant's participation was otherwise limited. Claimant made clear that she "[doesn't] do Instacart alone" and she is not lifting any bags. R. 662-665. Claimant's friend drives and Claimant is the passenger and does not carry groceries other than maybe a loaf of bread. R. 665. Claimant testified that the few hours that she spends doing Instacart "completely" exhausts her and she ends up in pain with muscle weakness and grip issues. R. 667.[3] The undersigned finds that there is nothing to reflect that the ALJ considered the limited nature of

---

[3] The transcript at R. 662 to 667 relates to the First Hearing conducted on May 12, 2020. Again, at the Second Hearing conduced on May 25, 2023, the ALJ referenced the testimony from the First Hearing and confirmed with Claimant that her memory was better when she testified in 2020. R. 533 to 534.

the "grocery deliverer" work when he discredited Claimant's complaints of disabling symptoms based on that activity.

Further, with respect to "carry and change diapers," Claimant testified that she could change a diaper, but the ALJ omits that the testimony reflects that Claimant does not do the lifting and she changes the diaper only after someone places the child on the bed or couch.  R. 653, 657.  As far as the ALJ's statement that Claimant can "drive," the record shows that Claimant reported that she can only drive short distances, she cannot sit in a car for an extended period, and she has pain in her neck when looking around while driving.  R. 279, 316.  Also, with respect to her ability to "shop in stores" as the ALJ describes, Claimant represented on the Function Reports that she cannot go to stores without her husband and grocery shops with the assistance of her husband and daughter to reach the items.  *Id.*

Based on the ALJ's characterization of these activities without notation of their limitations, it is not clear how the ALJ could find that Claimant engaged in activities that were not limited "to the extent one would expect."  R. 513.  The undersigned agrees with the Commissioner that the Court should read the decision as a whole and the Court should not re-weigh the evidence, but the ALJ did not adequately articulate the reasons for discrediting Claimant's testimony, and the record is not otherwise obvious as to the credibility finding.

The Commissioner focuses on the fact that the ALJ notes that Claimant reported that her activities were limited and were performed intermittently.  Doc. 21 at 4.  Indeed, the ALJ mentions the "frequent breaks," Claimant's reported inability to play with her children, and "that she had difficulties completing daily activities including tending to her personal care needs and completing household chores."  R. 513.  And, therefore, at first blush it seems the ALJ considered the limitations associated with these the daily activities.  But the ALJ's discussion of significant daily

activities the ALJ references to *discredit* Claimant's symptoms omits any discussion of such limitations. The ALJ's statement that Claimant can drive, shop, "work part-time as a grocery deliverer," and change diapers while failing to mention the serious restrictions Claimant reports with respect to these tasks is a mischaracterization of the record. Even reading the record as a whole, the ALJ's description does not accurately reflect the nature and extent of the activities.[4]

Again, that is not to say that the ALJ could not consider Claimant's basic daily activities such as self-care or preparing simple meals in assessing Claimant's statements,[5] but the characterization of the activities is problematic. *See Georgene Alwana Sills Shah v. Astrue*, 2012 WL 2502725, at *8 (S.D. Ga. May 31, 2012)*, report and recommendation adopted by*, 2012 WL 2502721 (S.D. Ga. June 28, 2012) (finding that deference to an administrative law judge's assessment of a plaintiff's testimony "does not entitle the ALJ to mischaracterize that testimony in his assessment of [the p]laintiff's credibility"). The undersigned does not agree with the Commissioner that the ALJ "considered the full scope of Plaintiff's daily activities."

---

[4] While the ALJ states that Claimant reported "difficulties" with respect to personal care needs and completing household chores, the ALJ does not address Claimant's limitations related to the grocery deliveries, diaper changing, driving, and shopping. Specifically, the ALJ states: "[Claimant] noted that she had difficulties completing daily activities including tending to her personal care needs and completing household chores and she had to take frequent breaks." R. 513 (citing 7E; 9E; 15E). Even so, the undersigned recognizes that Exhibits 7E and 15E also include Claimant's statements related to her ability to drive and to shop in stores. Assuming *arguendo* that ALJ's "difficulties" statement should not be limited to chores and personal care needs and was the ALJ's attempt to recognize Claimant's reported limitations as to the other tasks listed in the Function Reports, the undersigned still finds that the ALJ mischaracterized the record with respect to the grocery delivery and diaper changing Claimant testified to at the hearings. And as discussed, *infra*, those are the only two daily activities the ALJ references to find Dr. Grasso's opinion to be unpersuasive. *See* R. 516 (citing to "Hearing Testimony).

[5] *See e.g.*, *Thurston v. Kijkazi*, 2023 WL 2674705, at *4-5 (M.D. Fla. Mar. 29, 2023) (finding that the administrative law judge properly considered a claimant's daily activities, which included preparing simple means, cleaning, laundry, and washing dishes, along with other medical evidence, in assessing claimant's subjective complaints of pain and determining that claimant's fibromyalgia and other impairments were not as limiting as alleged).

And the ALJ's treatment of Claimant's statements impacts more than just the decision on Claimant's complaints of symptoms and limitations.   With respect to the ALJ's treatment of Claimant's physician's opinion, the ALJ found the following:

In April 2020, the claimant's physician since August 2018, Anthony Grasso, M.D., completed a Cervical Spine Medical Source Statement. He noted that the claimant was diagnosed with cervical and lumbar radiculopathy with chronic neck and upper back pain, paresthesia, and chronic daily headaches originating from her neck. The doctor reported that the claimant had tenderness, muscle spasm, muscle weakness, chronic fatigue, sensory changes, impaired sleep, inability to concentrate, lack of coordination, abnormal posture, reflex changes, motor loss, and reduced grip strength and she dropped things. He indicated that the claimant had fifty-percent decreased range of motion of her cervical spine and positive Spurling's test. The doctor found the claimant's prognosis was guarded. Dr. Grasso opined that the claimant could not even perform sedentary work. He believed that the claimant could only lift and carry less than ten pounds occasionally and stand and walk about two hours and sit for about four hours in an eight-hour workday. The doctor concluded that the claimant would need to shift positions at will from sitting, standing, or walking and take unscheduled breaks during the workday. He found the claimant would be able to rarely twist, look down or up, and turn her head right or left and never stoop, crouch, or climb ladders. Dr. Grasso believed the claimant could only perform manipulative limitations twenty- to fifty-percent of an eight-hour workday. He concluded that the claimant would be off task ten-percent of a workday and on average be absent from work about four days per month. The doctor stated that the claimant had these symptoms and limitations since August 2017 (Exhibit 8F).

The undersigned does not find this opinion persuasive. The opinion is not supported by the doctor's own treatment notes and the opinion is not consistent with the evidence of record. Dr. Grasso indicated that the claimant had spasm, but the evidence of record demonstrated that the claimant only had a spasm on three occasions in September, October, and November 2018 (Exhibit 4F/1, 5, 8). He stated that the claimant had lack of coordination, reflex and sensory changes, reduced grip, motor loss, and weakness. These findings are not supported by the evidence. On multiple examinations, the coordination was normal, upper extremity range of motion was normal, fine finger movements were normal, reflexes and sensation were normal, there was no atrophy or muscle wasting, and motor strength and grip strength were normal and symmetrical (Exhibits 4F/1-2, 5, 8; 5F/4; 9F/2, 12). Although Dr. Grasso noted that the claimant had fatigue, there is no evidence of fatigue and "no fatigue" was reported in the doctor's own progress notes (Exhibit 4F/17). The doctor indicated in his opinion that the claimant had chronic daily headaches, but his progress notes only occasionally mention that the claimant has "intermittent" headaches and the doctor never diagnosed the claimant with headaches (Exhibit 4F/1, 3). Although the claimant was diagnosed with chronic

post-traumatic headache by a neurologist, the claimant only appeared to receive treatment for the condition on several months in 2017 (Exhibit 9F/2, 9). Dr. Grasso also found the claimant had lumbar radiculopathy; however, progress notes from The Center for Spine Procedures indicated the claimant did not have lumbar radiculopathy and diagnostic images of the claimant's lumbar spine from April 2019 were within normal limits (Exhibits 4F/11, 13; 6F/1-2). The doctor stated that the claimant had these symptoms and limitations since August 2017, but he did not start treating the claimant until August 2018 (Exhibit 8F). ***The claimant was able to work as a grocery deliverer and she could carry and change diapers for her infant born on July 10, 2018 (Hearing Testimony).*** Physical examinations demonstrated that the claimant had normal range of motion, no muscle atrophy, and full strength even through 2023 showing that she was able to use her arms and her condition was not as limiting as found by Dr. Grasso (Exhibits 5F/4; 9F/1-2, 12; 11F/2).

R. 515 to 516 (emphasis added).

Accordingly, in deeming Dr. Grasso's opinion to be unpersuasive, the ALJ found an inconsistency in the record due to Claimant's ability to change diapers and act as a grocery deliverer. Claimant argues that the ALJ's reliance is misplaced because the infant care was performed with assistance and the delivery work was performed only with a friend and Claimant's husband. Doc. 17 at 15. Again, the undersigned agrees that the ALJ's description of these activities without reference to the extent or limited nature of the activity undermines the decision.

The Commissioner states:

The ALJ reasonably found that even Plaintiff's limited activities -- including her ability to perform some care activities for her newborn baby and work part-time for Instacart -- were inconsistent with her overall allegations regarding the intensity, persistence, and limiting effects of her impairments (Tr. 513) and the limitations assessed by Anthony Grasso, M.D., including his opinion that Plaintiff was totally incapable of lifting and carrying even ten pounds (Tr. 515-16 (citing Tr. 487-91)). When evaluating Dr. Grasso's opinion, the ALJ did not repeat the full analysis of Plaintiff's activities of daily living (Tr. 515-16), but he was not required to do so.

Doc. 21 at 4 to 5. But the problem is that the "full analysis" from earlier in the decision does not accurately describe the nature of the grocery delivery or diaper changing activities.[6] So while the Commissioner may be correct that the decision should be read as a whole and the ALJ need not be repetitive, the ALJ must still state an adequate reason for discrediting Claimant's testimony, which the undersigned finds the ALJ did not do.[7]

The analysis does not necessarily end here. The Eleventh Circuit has explained that "[r]emand is unwarranted unless an error creates fundamental 'unfairness' or 'prejudice.'" *Raper v. Comm'r of Soc. Sec.*, 89 F.4th 1261, 1277 (11th Cir. 2024) (quoting *Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991); *see also Flowers v. Comm'r, Soc. Sec. Admin.*, 97 F.4th 1300, 1307 (11th Cir. 2024) (finding harmless error where the claimant "failed to show that his argument

---

[6] Again, while the ALJ recognizes that Claimant stated that she had "difficulties" with certain tasks and cites to the Function Reports in support of that determination, the ALJ does not recognize the significant limitations of the grocery delivery work and the diaper changing task that Claimant discussed at the hearings. In other words, even if the ALJ recognized that Claimant reported some limitations on other tasks reflected in the Function Reports, the ALJ discredited those reports based on a mischaracterization of the grocery deliverer and diaper changing activities discussed at the hearings.

[7] Claimant notes in the Supplemental Reply that "arguments a party fails to address in a responsive briefing are deemed unrebutted." Doc. 22 at 1. Claimant is correct that "a legal claim or argument that has not been briefed before the court is deemed abandoned and its merits will not be addressed." *Access Now, Inc. v. Southwest Airlines Co.*, 385 F.3d 1324, 1330 (11th Cir. 2004). Upon review of the briefs, the undersigned found that the Commissioner did not address certain arguments Claimant raised across a number of issues and sub-issues and directed supplemental briefing. Doc. 20. With respect to the mischaracterization argument at issue in this report and recommendation, the undersigned does not find waiver. In particular, the undersigned made clear in the order directing supplementation that Claimant raised the mischaracterization argument in two separate issues. *Id.* at 2 n.2. The undersigned found that the Commissioner's response that the ALJ's analysis was reasonable with respect to the "nuances of her work activity" and the ALJ's decision should otherwise be read as a whole did not necessarily assist the Court. *Id.* While the Commissioner's response was insufficient, it was not waived. In any event, Claimant requests that "[t]o the extent the Supplemental Brief fails to cure those deficiencies, the arguments stand unrebutted and should be resolved in [Claimant's] favor." Doc. 22 at 1. The undersigned finds that the Commissioner has addressed the arguments, but Claimant is still entitled to relief.

would make any difference to his application for disability benefits") (citing *Raper*, 89 F.4th at 1274 n.11); *Acosta v. Acting Comm'r of Soc. Sec.*, 2025 WL 1672408, at *2 (11th Cir. June 13, 2025) ("If a claimant would not be entitled to benefits even absent an alleged error, that error is considered harmless.") (citing *Flowers*, 97 F.4th at 1307-08).

Here, the ALJ's mischaracterization of the daily activities prejudiced Claimant because the ALJ relied upon the activities to determine that Dr. Grasso's opinion is unpersuasive, as reflected in the RFC and the ALJ's ultimate determination that Claimant can perform past relevant work. According to the ALJ, Dr. Grasso opined on Claimant's ability to lift, carry, stand, walk, sit, twist, look down or up, turn, stoop, crouch, climb, and manipulate, as well as Claimant's need to take unscheduled breaks, be off task, and be absent from work, and determined that Claimant could not perform even sedentary work. R. 514 to 515. Yet, contrary to that opinion, the RFC is as follows:

> After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b), as the claimant was able to lift and carry twenty pounds occasionally and ten pounds frequently and sit, stand, and walk six hours each in an eight hour workday with unlimited pushing and pulling within the twenty- and ten- pound weight limits. However, the claimant could occasionally climb ladders, ropes, scaffolds, ramps, and stairs. The claimant could frequently balance. The claimant could occasionally stoop, kneel, crouch, and crawl. The claimant could occasionally overhead reach.

R. 512.

The ALJ determined that "[t]hrough the date last insured, the [C]laimant was capable of performing past relevant work as a customer service representative (call center) (DOT Code 241.367-014)" and found that "[t]his work did not require the performance of work-related activities precluded by [Claimant's] residual functional capacity." R. 516. The ALJ states that the record reflects that Claimant worked as a customer service representative and "[t]he vocational expert testified and defined the job of customer service representative (call center center) as a

sedentary job with specific vocational profile of five, meaning it takes anywhere from six months to one year to learn." R. 517.[8] The ALJ states that "[i]n comparing the claimant's residual functional capacity with the physical and mental demands of a customer service representative (call center), the undersigned finds the claimant is able to perform this work as generally performed in the national economy." *Id*. The ALJ adds that "[a]t the hearing, the vocational expert testified that a hypothetical person with the same vocational profile and limitations as the claimant could return to past relevant work as a customer service representative (call center) as generally performed in the national economy." *Id*.

Indeed, the transcript reflects that the ALJ asked the vocational expert to assume a residual functional capacity which is reflected in the final RFC (Compare R. 512 with R. 541),[9] and the vocational expert concluded that the past customer service representative work could be done with that hypothetical. R. 541. Upon Claimant's counsel's examination, however, the vocational expert stated that the opinion would be modified and Claimant would be precluded from work if certain limitations reflected in Dr. Grasso's opinion were taken into account.[10]

---

[8] The ALJ states: "Pursuant to SSR 00-4P, the undersigned has determined that the vocational expert's testimony is consistent with the information contained in the Dictionary of Occupational Titles (DOT) with the exception of the testimony regarding limitations that the DOT does not address. However, the undersigned has relied upon the vocational expert's education and expertise in accepting her testimony regarding these limitations (Exhibit 19E)." R. 517.

[9] Specifically, the ALJ asked the vocational expert to assume a RFC for "light work described as follows: lifting carrying 20 pounds occasionally and 10 pounds frequently. Sit, stand and walk six hours each in an eight-hour workday. Unlimited pushing and pulling within the 20/10 weight limits. Occasional climbing of ladders, ropes and scaffolds. Occasional climbing of ramps and stairs. Frequent balancing. Occasional stooping, kneeling, crouching and crawling. Occasional overhead reaching." R. 541.

[10] The vocational expert testified that in answering about the specific jobs, the vocational expert only considered the limitations in the ALJ's hypothetical questions. R. 541.

Specifically, the vocational expert testified that if the hypothetical person's ability to grasp and finger and reach in front of the body was limited to 50% bilaterally, it would preclude the past job.  R. 542 to 543.[11]  In the decision, the ALJ cited to Dr. Grasso's opinion regarding manipulative limitations (twenty to fifty percent of an eight-hour workday) (R. 515 citing to Exhibit 8F), and Dr. Grasso's report reflects that Claimant could only use her hands to grasp, fingers to manipulate, and arms to reach in front of her body 50 percent of the day.  R. 490.  In comparison, the vocational expert testified that the person performing the customer service work is "going to be reaching out in front of her to take calls, work a keyboard, write things down, a variety of those activities, and it's going to be on a constant basis with the past jobs."  R. 543.

---

[11] The vocational expert also testified that if the hypothetical individual could only sit for four hours and stand for two hours (as reflected in Dr. Grasso's opinion) then "it would be part-time work, not a full eight-hour day" and Claimant would be precluded from full-time competitive employment.  R. 543.  Further, as reflected in the ALJ's decision, Dr. Grasso opined that Claimant would need to shift positions at will from sitting, standing, or walking.  R. 515.  The testimony is as follows:

> Counsel: Okay. Same question, if the hypothetical individual was limited to, at one time, sitting for 30 minutes and standing for 30 minutes at one time, how would that affect your testimony?

> Vocational Expert: There are some jobs that will accommodate a sit/stand option. I will note that 30 minutes is like the least amount of time that a person would need to be in one position or the other. If they're cycling more frequently than that, it's disruptive to their attention and concentration. They're just thinking more about changing positions than they are doing their job duties. So, they end up producing less work, and the quality suffers, again, compared to their peers. Kind of like off task behavior in general for whatever reason. Being in one position or the other for prolonged periods is better.

> Counsel: And that would preclude competitive employment, correct?

> Vocational Expert: Yes, sir. It'll interfere with sustaining it, sure.

R. 544.

Also, when asked how many days an employee may miss and maintain competitive employment, the vocational expert testified that it varies but generally one to two per month is the tolerance for the employers in the industry. R. 542.[12] Dr. Grasso opined that Claimant would be absent on average four days per month. R. 515.[13] Further, with respect to Claimant's need for unscheduled breaks, the vocational expert testified that having up to two additional breaks per day on a regular basis other than those required by law would require an employer to provide an accommodation and, without the accommodation, the individual could not sustain the job. R. 543 to 544.

As shown in the vocational expert's testimony, Claimant could not perform the past work as a customer service representative if some of Dr. Grasso's limitations were reflected in the RFC. And being that the ALJ discredits Dr. Grasso's opinion based on a mischaracterization of the

---

[12] The transcript reflects the following dialog:

> Counsel: And what about missed days? How many days can an employee miss and maintain competitive employment?
>
> Vocational Expert: Honestly, it varies a lot between employers and settings. Generally speaking, manufacturing, production settings tend to have essentially full-time folks rather than part-time. So, it's harder for them to get extra people in to cover shifts and serve already there. So half a day per month is well within customary tolerance with those types of employers. Things like retail, clerical, service industry, things like cleaning a nd food service, that sort of thing, it's predominantly part-time folks rather than full-time, so it ' s a little easier for them to cover shifts. So, generally one to two days per month is the tolerance for the employers I see in the industry.

R. 542. Assuming, however, the vocational expert's reference to "industry" does not include the relevant industry, the vocational expert still stated that the hypothetical person with Claimant's limitations associated with grasping and reaching out could not perform the past relevant work.

[13] Additionally, the vocational expert stated that if the hypothetical individual's ability to lift was limited to less than ten pounds occasionally (as reflected in Dr. Grasso's opinion), the limitations "would put that person down to sedentary level and **a reduced range of sedentary at that**." R. 542 (emphasis added).

- 16 -

record which affected the RFC and the finding that Claimant could perform past relevant work, the undersigned recommends that the error was not harmless.

## **CONCLUSION**

For the reasons stated above, it is **RECOMMENDED** that the Court **REVERSE** and **REMAND** the final decision of the Commissioner, terminate all pending motions as moot (e.g., Doc. 17), and direct the Clerk to close the case.

## **NOTICE TO PARTIES**

The party has fourteen days from the date the party is served a copy of this report to file written objections to this report's proposed findings and recommendations or to seek an extension of the fourteen-day deadline to file written objections. 28 U.S.C. § 636(b)(1)(C). A party's failure to serve and file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1; 28 U.S.C. § 636(b)(1).

**RECOMMENDED** in Orlando, Florida on June 11, 2026.

DANIEL C. IRICK
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties